**IN THE UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF GEORGIA**
**ATLANTA DIVISION**

| | |
|---|---|
| WHAM-O HOLDING, LTD. and INTERSPORT CORP. d/b/a WHAM-O,<br><br>*Plaintiffs,*<br><br>v.<br><br>CHENGLIANG-US, et al.,<br><br>*Defendants.* | **FILED UNDER SEAL**<br><br>Civ. Act. No. 1:26-CV-04116-JPB |

---

**DEFENDANTS' KOTEK INTERNATIONAL LIMITED d/b/a COTEKUS ("COTEKUS," DOE NO. 2), SUPERBUY INC. d/b/a GOPLUSUS ("GOPLUSUS," DOE NO. 4), LDAILY INTERNATIONAL LIMITED d/b/a LDAILY ("LDAILY," DOE NO. 7), and HARHOMEY INTERNATIONAL LIMITED d/b/a LIFEZEALUS ("LIFEZEALUS," DOE NO. 76) COMBINED MEMORANDUM OF LAW IN SUPPORT OF THEIR MOTION TO DISSOLVE TEMPORARY RESTRAINING ORDER AND OPPOSITION TO PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION**

---

## TABLE OF CONTENTS


I. INTRODUCTION ..... 1

II. STATEMENT OF RELEVANT FACTS ..... 2

A. KOTEK International Limited d/b/a COTEKUS (Doe No. 2) ..... 3

B. Superbuy Inc. d/b/a GoplusUS (Doe No. 4) ..... 4

C. LDAILY International Limited d/b/a LDAILY (Doe No. 7) ..... 4

D. Harhomey International Limited d/b/a Lifezealus (Doe No. 76) ..... 5

III. LEGAL STANDARD ..... 6

IV. ARGUMENT ..... 8

A. Plaintiffs Have Not—And Cannot—Demonstrate a Substantial Likelihood of Success on the Merits ..... 8

1. There Is No Ongoing Infringement to Enjoin ..... 8

2. The Complaint Fails to Differentiate Among 98 Defendants ..... 10

3. Defendants' Use of "Boogie" Was Descriptive, Not Counterfeiting ..... 12

4. LDAILY Reserves Its Personal Jurisdiction Defense ..... 14

B. Moving Defendants Have Rebutted The Statutory Presumption of Irreparable Harm ..... 15

C. The Balance of Equities Favors Defendants ..... 17

1. The Asset Freeze Is Overbroad and Disproportionate ..... 17

2. The $10,000 Bond Is Inadequate ..... 19

3. Moving Defendants Are Cooperating with the TRO and with the Case ..... 20

D. The Public Interest Does Not Support the Injunction ..... 22

E. Plaintiffs Appear to Have Failed to Comply with Their Heightened Duty of Candor in the Ex Parte TRO Proceeding ..... 23

V. RELIEF REQUESTED ..... 25

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Already, LLC v. Nike, Inc.*,
568 U.S. 85 (2013) .......... 9

*BellSouth Telecommunications, Inc. v. MCIMetro Access Transmission Services, LLC*,
425 F.3d 964 (11th Cir. 2005) .......... 20

*Citibank, N.A. v. Citytrust*,
756 F.2d 273 (2d Cir. 1985) .......... 17

*eBay Inc. v. MercExchange, L.L.C.*,
547 U.S. 388 (2006) .......... 11

*Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*,
528 U.S. 167 (2000) .......... 9

*Friends of the Everglades, Inc. v. Secretary of United States Department of Homeland Security*,
No. 25-12873, 2025 WL 2598567 (11th Cir. Sept. 4, 2025) .......... 15

*Granny Goose Foods, Inc. v. Brotherhood of Teamsters*,
415 U.S. 423 (1974) .......... 22

*Green Development Corp. S.A. De C.V. v. Zamora*,
No. 15-21594-MC, 2016 WL 2745844 (S.D. Fla. May 10, 2016) .......... 23

*In re Klein*,
No. 1:23-MC-24630-CMA, 2025 WL 5078047 (S.D. Fla. Oct. 17, 2025) .......... 24

*KP Permanent Make-Up, Inc. v. Lasting Impression I, Inc.*,
543 U.S. 111 (2004) .......... 13

*Plant v. Doe*,
19 F. Supp. 2d 1316 (S.D. Fla. 1998) .......... 11, 25

*Pons v. AMKE Registered Agents, LLC*,
835 F. App’x 465 (11th Cir. 2020) .......... 24, 25

*Rolex Watch U.S.A., Inc. v. Jewelry Unlimited, Inc.*,
757 F. Supp. 3d 1342 (N.D. Ga. 2024) .................................................. 14, 15

*Sarvint Technologies, Inc. v. Carré Technologies, Inc.*,
No. 1:15-CV-69-TCB, 2015 WL 11718110 (N.D. Ga. July 2, 2015) .................................................. 15

*Schiavo ex rel. Schindler v. Schiavo*,
403 F.3d 1223 (11th Cir. 2005).................................................. 6, 7

*Sunmark, Inc. v. Ocean Spray Cranberries, Inc.*,
64 F.3d 1055 (7th Cir. 1995).................................................. 13

*United States v. W.T. Grant Co.*,
345 U.S. 629 (1953)..................................................9

*Winter v. Nat. Res. Def. Council, Inc.*,
555 U.S. 7 (2008)..................................................8

*Wreal, LLC v. Amazon.com, Inc.*,
38 F.4th 114 (11th Cir. 2022) .................................................. 13

*Wreal, LLC v. Amazon.com, Inc.*,
840 F.3d 1244 (11th Cir. 2016).................................................. 17

**Statutes**

15 U.S.C. § 1116(a) .................................................. 7, 16

Lanham Act §43, 15 U.S.C. § 1125(a) .................................................. 13

Under the Trademark Modernization Act..................................................7

**Other Authorities**

Fourteenth Amendment .................................................. 15

Boogie Board, Merriam-Webster, https://www.merriam-webster.com/dictionary/boogie%20board (last visited Sept. 28, 2026) .................................................. 13

Columbia L. Rev.................................................. 11

*Fed. R. Civ. P. 65(b)(1)*.................................................. 21

Fed. R. Civ. P. 65(b)(4) .......... 7

Federal Rule of Civil Procedure 12(b)(2) .......... 15

Federal Rule of Civil Procedure 65(c) .......... 20, 21

Rule 7(a) .......... 15

Rule 12 .......... 15

## I. INTRODUCTION

Plaintiffs Wham-O Holding, Ltd. and Intersport Corp. d/b/a Wham-O ("Plaintiffs") obtained an *ex parte* Temporary Restraining Order against ninety-eight Doe defendants, premised on the theory that all are active participants in an organized counterfeiting network. Plaintiffs' premise with respect to Defendants KOTEK International Limited d/b/a COTEKUS ("COTEKUS," Doe No. 2), Superbuy Inc. d/b/a GoplusUS ("GoplusUS," Doe No. 4), LDAILY International Limited d/b/a LDAILY ("LDAILY," Doe No. 7), and Harhomey International Limited d/b/a Lifezealus ("Lifezealus," Doe No. 76) (collectively, "Moving Defendants") is legally flawed and substantively inaccurate.

Moving Defendants are individual online sellers of generic body boards and other consumer goods. They are not counterfeiters. They do not produce imitation Wham-O products. They do not reproduce Plaintiffs' trademarks on their goods, packaging, or logos. Critically, each of the Moving Defendants *voluntarily removed* the term "boogie" or "boogie board" from their product listings between July and August 2025, ***more than eleven months before*** Plaintiffs filed this Complaint on July 20, 2026. There is no ongoing infringement. There has been no infringement for over a year. For instance, the latest Moving Defendant to remove "boogie" from its listing, COTEKUS, removed the term on August 17, 2025.

Plaintiffs filed their Complaint and their Motion for *Ex Parte* Temporary Restraining Order (the "TRO Motion") apparently without verifying whether any of the Moving Defendants were engaged in the conduct forming the basis for the requested relief. On September 4, 2026, this Court granted the TRO Motion, (Dkt. #9), (the "TRO Order") relying upon Plaintiffs' inaccurate representations regarding Moving Defendants' conduct.

Plaintiffs then filed their Motion to Extend Temporary Restraining Order on September 11, 2026, more than a year after the latest Moving Defendant ceased the conduct identified in the TRO Motion, again apparently without determining whether any of the Moving Defendants were engaged in the conduct identified in the TRO Motion. The Court granted this motion on September 16, 2026, (the "TRO Extension Order") again apparently relying upon the misstatements regarding Moving Defendant's conduct. (Dkt. #13).

For the reasons set forth below, the Moving Defendants respectfully request that this Court, as to Moving Defendants, dissolve the Temporary Restraining Order and deny Plaintiffs' Motion for Preliminary Injunction.

## II. STATEMENT OF RELEVANT FACTS

The following facts are drawn from the sworn declarations submitted by each of the Moving Defendants in support of this Motion.

### A. KOTEK International Limited d/b/a COTEKUS (Doe No. 2)

KOTEK International Limited d/b/a COTEKUS ("COTEKUS") is a Hong Kong corporation that sells body boards and related recreational products through Amazon.com under Seller ID A312GD24ZW7S7X. (Declaration of Baohua Shan ("Shan Decl."), ¶¶2–3, attached hereto as **Exhibit A**.) COTEKUS sold body boards under Amazon Standard Identification Number ("ASIN") B0FBGK7TJG. (*Id.*, ¶4.)

COTEKUS included the word "boogie" in its product listing as a descriptive keyword intended to help consumers find body boards, not as an attempt to pass off its products as Wham-O products or to trade on Wham-O's brand. (Shan Decl., ¶¶5–6.) On or about August 17, 2025, COTEKUS voluntarily removed the word "boogie" from its product listing. (*Id.*, ¶7, Ex. 1.) COTEKUS has not used the word "boogie" in any product listing since that date, a period of over thirteen months as of the date of this filing. (*Id.*)

COTEKUS's total all-time sales for the relevant ASIN are $4,459.25. Of that amount, $1,917.50 was generated before COTEKUS removed "boogie" from its listing, and $2,541.75 was generated after, during a period in which no allegedly infringing use was occurring. (Shan Decl., ¶8.) COTEKUS received notice of the TRO on or about September 17, 2026. (*Id.*, ¶9.)

**B. Superbuy Inc. d/b/a GoplusUS (Doe No. 4)**

Superbuy Inc. d/b/a GoplusUS ("GoplusUS") is a California corporation that sells various consumer goods through Amazon.com under Seller ID A1OIIZJKTXNTOC. (Declaration of Lily Zhou ("Zhou Decl."), ¶¶2–3, attached hereto as **Exhibit B**.) GoplusUS sold body boards under ASIN B084TM3SVQ. (*Id.*, ¶4.)

GoplusUS included the word "boogie" in its product listing as a descriptive keyword to assist consumer search. (Zhou Decl., ¶¶5–6.) On or about July 23, 2025, GoplusUS voluntarily removed the word "boogie" from its product listing. (*Id.*, ¶7, Ex. 1.) GoplusUS has not used the word "boogie" in any product listing since that date. (*Id.*)

GoplusUS's total all-time sales for the relevant ASIN are $16,303.91. Of that amount, $8,313.52 was generated before GoplusUS removed "boogie" from its listing, and $7,990.39 was generated after removal, when no allegedly infringing use was occurring. (Zhou Decl., ¶8.) GoplusUS received notice of the TRO on or about September 16, 2026. (*Id.*, ¶9.)

**C. LDAILY International Limited d/b/a LDAILY (Doe No. 7)**

LDAILY International Limited d/b/a LDAILY ("LDAILY") is a Hong Kong corporation that sells various consumer goods through Amazon.com under Seller ID ALCZ84QFA7EWF. (Declaration of Yanrong Shi ("Y. Shi

Decl."), ¶¶2–3, attached hereto as **Exhibit C**.) LDAILY sold body boards under ASIN B0F66QLQ7F. (*Id.*, ¶4.)

LDAILY included the word "boogie" in its product listing as a descriptive keyword to assist consumer search. (Y. Shi Decl., ¶¶5–6.) On or about July 31, 2025, LDAILY voluntarily removed the word "boogie" from its product listing. (*Id.*, ¶7, Ex. 1.) LDAILY has not used the word "boogie" in any product listing since that date. (*Id.*)

LDAILY's total all-time sales for the relevant ASIN are $2,023.33. Of that amount, $643.63 was generated before LDAILY removed "boogie" from its listing, and $1,379.70 was generated after removal. (Y. Shi Decl., ¶8.) Notably, **LDAILY has made zero sales to customers located in the State of Georgia.** (*Id.*, ¶9.)

### D. Harhomey International Limited d/b/a Lifezealus (Doe No. 76)

Harhomey International Limited d/b/a Lifezealus ("Lifezealus") is a Hong Kong corporation that sells various consumer goods through Temu under Seller ID 634418216000383. (Declaration of Fangfang Yao ("Yao Decl."), ¶¶2–3, attached hereto as **Exhibit D**.) Lifezealus is the only one of the Moving Defendants that sells through Temu rather than Amazon.

Lifezealus included the phrase "boogie board" in its product listing as a descriptive keyword to assist consumer search. (Yao Decl., ¶¶5–6.) On or about July 24, 2025, Lifezealus voluntarily removed the phrase "boogie board" from

its product listing. (*Id.*, ¶7, Ex. 1.) Lifezealus has not used the phrase "boogie board" in any product listing since that date. (*Id.*)

Lifezealus's total all-time sales for the relevant listings are $3,602.41. Of that amount, only $325.53 was generated before Lifezealus removed "boogie board" from its listing, and $3,276.88 was generated after removal. (Yao Decl., ¶8) Temu froze Lifezealus's account in connection with this litigation. (*Id.*, ¶9.) Lifezealus has yet to receive notice of this lawsuit or of the TRO directly from Plaintiffs. (*Id.*, ¶14.)

In sum, every one of the Moving Defendants voluntarily ceased any use of "boogie" or "boogie board" in their product listings between July 23, 2025, and August 17, 2025, at minimum eleven months before Plaintiffs filed their Complaint on July 20, 2026. Moreover, as discussed more fully below, the Moving Defendants' combined total sales for the listings are approximately $26,388.90, a figure that includes *substantial* sales made after the allegedly infringing term was removed and during which no infringement of any kind was occurring.

## III. LEGAL STANDARD

A preliminary injunction is "an extraordinary and drastic remedy." *Schiavo ex rel. Schindler v. Schiavo*, 403 F.3d 1223, 1231 (11th Cir. 2005). It should not be granted unless the movant clearly establishes that it is warranted. To obtain a preliminary injunction, a plaintiff must demonstrate

the following four factors, as set forth in *Schiavo*: (a) a substantial likelihood of success on the merits; (b) that irreparable injury will be suffered unless the injunction issues; (c) that the threatened injury to the movant outweighs whatever damage the proposed injunction may cause the opposing party; and (d) that the injunction, if issued, would not be adverse to the public interest. *Id.*, at 1225–26. The movant bears the burden of persuasion on each of these four prerequisites. *Id.*

Under the Trademark Modernization Act, codified at 15 U.S.C. § 1116(a), there is a rebuttable presumption of irreparable harm upon a finding of likelihood of success on the merits in a trademark infringement action. This presumption, however, is rebuttable by, e.g., evidence that the circumstances do not warrant a finding of irreparable harm.

A temporary restraining order may be dissolved or even vacated where changed circumstances or the presentation of new evidence undermines the basis upon which the order was originally granted. *See* Fed. R. Civ. P. 65(b)(4) (providing that a TRO may be dissolved on motion by the restrained party).

Here, the Court's TRO Order included an Order to Show Cause why a preliminary injunction should not issue. (Dkt. #9) Plaintiffs apparently rely upon their TRO memorandum and supporting declarations as their PI showing. This response and the accompanying declarations represent the first individualized evidence the Court has received regarding the Moving

Defendants. The Court's inquiry is therefore whether the purported *prima facie* showing made in support of the TRO is rebutted by the record now before the Court, including the Moving Defendants' sworn declarations.

## IV. ARGUMENT

### A. Plaintiffs Have Not—And Cannot—Demonstrate a Substantial Likelihood of Success on the Merits

Plaintiffs bear the burden of demonstrating a substantial likelihood of success on the merits as to *each* defendant against whom they seek injunctive relief. Plaintiffs have not—and, indeed, cannot—meet that burden here. The Moving Defendants voluntarily ceased the only conduct Plaintiffs allege to be infringing, the use of "boogie" or "boogie board" in online product listings, more than eleven months before Plaintiffs filed suit. The undisputed record establishes that there is no ongoing infringement, that Plaintiffs' Complaint fails to differentiate among ninety-eight defendants with vastly different circumstances, and that the Moving Defendants' use of the term was descriptive rather than an act of counterfeiting.

#### 1. <u>There Is No Ongoing Infringement to Enjoin</u>

The fundamental purpose of injunctive relief is to prevent *future* harm, not to punish past conduct. *See Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008) ("A plaintiff seeking a preliminary injunction must establish . . . that he is likely to suffer irreparable harm in the absence of preliminary relief."). Where the allegedly infringing conduct has ceased and there is no

reasonable expectation that it will resume, there is no basis for injunctive relief.

The well-established voluntary cessation doctrine recognizes that a case may become moot when a defendant voluntarily ceases the challenged conduct and "it is absolutely clear that the allegedly wrongful behavior could not reasonably be expected to recur." *Friends of the Earth*, *Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167, 189 (2000) (quoting *United States v. Concentrated Phosphate Export Ass'n*, 393 U.S. 199, 203 (1968)). While a defendant's voluntary cessation does not automatically moot a case, it is a critical factor in determining whether injunctive relief is warranted. *See United States v. W.T. Grant Co.*, 345 U.S. 629, 632–33 (1953). Courts decline to issue injunctions where the defendant has ceased the challenged activity and there is no evidence suggesting it will resume. *See Already, LLC v. Nike, Inc.*, 568 U.S. 85, 91 (2013) (voluntary cessation of challenged conduct moots case where it is "absolutely clear" conduct "could not reasonably be expected to recur").

Here, the record is unambiguous. Each of the Moving Defendants has submitted a sworn declaration establishing that:

- COTEKUS removed "boogie" from its listing on or about August 17, 2025, over thirteen months ago. (Shan Decl., ¶7.)
- GoplusUS removed "boogie" from its listing on or about July 23, 2025, over fourteen months ago. (Zhou Decl., ¶7.)

- LDAILY removed “boogie” from its listing on or about July 31, 2025, over fourteen months ago. (Y. Shi Decl., ¶7.)
- Lifezealus removed “boogie board” from its listing on or about July 24, 2025, over fourteen months ago. (Yao Decl., ¶7.)

None of the Moving Defendants has used “boogie” or “boogie board” in any product listing since removing it in July–August 2025. (Shan Decl., ¶7; Zhou Decl., ¶7; Y. Shi Decl., ¶7; Yao Decl., ¶7.) None intends to resume such use. (Shan Decl., ¶13; Zhou Decl., ¶13; Y. Shi Decl., ¶14; Yao Decl., ¶12.) There is simply no conduct for an injunction to enjoin.

Plaintiffs may argue that the Moving Defendants’ voluntary cessation is insufficient because they could, in theory, resume using “boogie” at any time. This rank speculation regarding a theoretical possibility fails to satisfy Plaintiffs’ burden. The Moving Defendants’ cessation was not in response to this lawsuit; it occurred over eleven months before the Complaint was filed. The Moving Defendants had no knowledge of Plaintiffs’ claims or the potential of this litigation when they removed the term. Their decision was independent and voluntary, and the extended passage of time without resumption is powerful evidence that the conduct will not recur.

2. <u>The Complaint Fails to Differentiate Among 98 Defendants</u>

Plaintiffs’ Complaint paints all ninety-eight Doe defendants with the same broad brush, characterizing them as active participants in an organized counterfeiting network. The Complaint makes no individualized allegations about any of the Moving Defendants. While Exhibit 2 to the Complaint

provides screenshot evidence of each defendant's listings, the Complaint does not address the timing of this evidence,[1] acknowledge that some defendants had ceased the alleged conduct, or make individualized allegations about whether the depicted conduct was ongoing at the time of filing. It does not acknowledge that at least some defendants, including these four, ceased the allegedly infringing conduct well over a year before the Complaint was filed.

This lack of differentiation raises concerns in the preliminary injunction context, where courts are called upon to evaluate the specific circumstances before imposing the extraordinary remedy of injunctive relief. *See eBay Inc. v. MercExchange, L.L.C.*, 547 U.S. 388, 391–94 (2006) (courts must exercise equitable discretion and not apply "general rule" or "broad classifications"). Contrary to Plaintiffs' approach, each defendant is entitled to an individualized assessment of the four preliminary injunction factors.

Moving Defendants are demonstrably different from whatever conduct may be alleged against other defendants in this action. They are individual sellers who voluntarily ceased using the term "boogie" long before this lawsuit began, who have combined all-time sales of approximately $26,388.90 from the

[1] *See* Plaintiffs' Exhibit 2, pp. 3, 5, 8, and 77. These pages in Exhibit 2 referencing the Moving Defendants are remarkable for what they do not contain—a proper citation to the URLs that includes the requisite "last visited" date, indicating when the screenshot was created. *See The Bluebook: A Uniform System of Citation* R. 18.2.2(c) (Columbia L. Rev. Ass'n, *et al*. eds., 22nd ed. 2025); *see also Plant v. Doe*, 19 F. Supp. 2d 1316 (S.D. Fla. 1998) (denying *ex parte* TRO in trademark infringement action).

accused body board listings, and who have now appeared through counsel and are cooperating fully with the litigation. Treating them identically to unidentified alleged counterfeiters, if any such defendants exist in this case, is neither legally supportable nor equitable.

3. Defendants' Use of "Boogie" Was Descriptive, Not Counterfeiting

Plaintiffs' Complaint proceeds on the theory that the Moving Defendants are counterfeiters, that they are part of an organized network producing and selling imitation Wham-O products. This characterization is not supported by the record. The Moving Defendants sell their own generic body boards. They do not reproduce Plaintiffs' trademarks on their products, packaging, or logos. They do not sell products designed to be confused with Wham-O products.

The term "boogie board" is widely used by consumers and retailers alike as a generic or descriptive term for body boards. A simple search on any major e-commerce platform reveals hundreds of sellers using the term "boogie board" to describe generic body board products.[2] In any event, Moving Defendants' use of this common descriptive term in product listings, under their own brand names, is not the type of willful trademark counterfeiting that the Lanham Act's injunctive relief provisions are designed to address.

[2] *See also* Boogie Board, Merriam-Webster, https://www.merriam-webster.com/dictionary/boogie%20board (last visited Sept. 28, 2026) (defining "boogie board" as "bodyboard," without any reference to "Wham-O").

Similarly, under §43 of the Lanham Act, 15 U.S.C. § 1125(a), not every use of a trademarked term is likely to cause confusion. Descriptive or nominative uses of a mark are permissible, and the Moving Defendants' use of "boogie" as a product-category keyword, which they voluntarily ceased over a year ago, does not establish the kind of deliberate, ongoing infringement that would warrant injunctive relief. *See KP Permanent Make-Up, Inc. v. Lasting Impression I, Inc.*, 543 U.S. 111, 122 (2004) (recognizing fair use defense for descriptive use of a trademarked term); *Sunmark, Inc. v. Ocean Spray Cranberries, Inc.*, 64 F.3d 1055, 1058 (7th Cir. 1995) (use of a term in its descriptive sense is not infringement).

Moreover, Moving Defendants' prominent use of their own brand names on their product listings independently negates any likelihood of confusion. *See, e.g.*, *Wreal, LLC v. Amazon.com, Inc.*, 38 F.4th 114, 131 (11th Cir. 2022) (where a commercially superior plaintiff sues a defendant for attempting to profit from its goodwill, "the presence of a housemark is indeed likely to dispel confusion in ordinarily prudent consumers.") Moving Defendants present precisely such a case: Plaintiffs are the senior mark owners, and they allege that the Moving Defendants sought to trade on Plaintiffs' goodwill. But the record demonstrates the opposite. Each of the Moving Defendants' product listings led with its own brand name as the very first word of the product title: "**KOTEK** Boogie Board, 33/37/42 Inch Bodyboard" (Shan Decl., ¶4 (emphasis

added)); "**Goplus** Boogie Boards for Beach" (Zhou Decl., ¶4 (emphasis added)); "**LDAILY** Boogie Boards for Beach" (Y. Shi Decl., ¶4 (emphasis added)). Lifezealus's listing led with "**LIFEZEAL**" and did not include "boogie board" in the product title at all; the phrase appeared only in the product description text. (Yao Decl., ¶¶4–5.) In every instance, Moving Defendants' own brand was the primary source identifier, with "boogie" or "boogie board" appearing, if at all, only as a secondary product-category descriptor.

In *Rolex Watch U.S.A., Inc. v. Jewelry Unlimited, Inc.*, 757 F. Supp. 3d 1342 (N.D. Ga. 2024), this Court recently applied this principle in finding counterfeiting liability where the defendant's watches bore "only Rolex's marks" and "it [was] far from obvious that the watches [were] affiliated with any entity other than Rolex." *Id.* at 1358. The court specifically distinguished *Vortic*, where the defendant's "logos predominate" alongside the plaintiff's marks. *Id.* The logical corollary applies here: Moving Defendants' products bore their own brands prominently, before any word that Wham-O alleges identifies them as a source. This is not counterfeiting; it is the use of a descriptive term, under a clearly identified competing brand, in a manner that the Eleventh Circuit has recognized as likely to dispel, not create, confusion.

4. LDAILY Reserves Its Personal Jurisdiction Defense

LDAILY had **zero sales** to customers located in the State of Georgia. (Y. Shi Decl., ¶9.) LDAILY is a Hong Kong corporation with no offices, employees,

agents, or physical presence in Georgia. LDAILY's contacts with Georgia are, at most, nearly nonexistent, raising serious questions about whether this Court may exercise personal jurisdiction over LDAILY consistent with the Due Process Clause of the Fourteenth Amendment.

LDAILY reserves its right to challenge personal jurisdiction under Federal Rule of Civil Procedure 12(b)(2) and intends to file an appropriate motion with its Answer or separately. LDAILY does not waive this defense by opposing the pending TRO and preliminary injunction.[3]

**B. Moving Defendants Have Rebutted The Statutory Presumption of Irreparable Harm**

Plaintiffs' have relied upon the rebuttable presumption of irreparable harm established by 15 U.S.C. § 1116(a), which provides that a court may presume irreparable harm upon a finding of likelihood of success on the merits in a trademark infringement action. But, as established above, Plaintiffs cannot establish a likelihood of success on the merits as to the Moving

[3] The Eleventh Circuit recently confirmed that an opposition to a TRO or preliminary injunction motion is not a "pleading" within the meaning of Rule 7(a), and therefore a defendant's failure to raise a defense in such an opposition does not constitute waiver under Rule 12. *Friends of the Everglades, Inc. v. Secretary of United States Department of Homeland Security*, No. 25-12873, 2025 WL 2598567, at *10 (11th Cir. Sept. 4, 2025); *see also Sarvint Technologies, Inc. v. Carré Technologies, Inc.*, No. 1:15-CV-69-TCB, 2015 WL 11718110, at *2–3 (N.D. Ga. July 2, 2015) (personal jurisdiction defense preserved where raised in answer and PI opposition, and Rule 12(b)(2) motion filed before Court rules on merits).

Defendants in the first instance. Moreover, the presumption is also rebutted here by the totality of the circumstances.

First, Moving Defendants have *already ceased* the allegedly infringing conduct voluntarily and have not engaged in it for over eleven months as of the date of the Complaint and over thirteen months as of the date of this filing. There is no ongoing harm. The statutory presumption is designed to address situations where infringement is occurring or imminent; it does not create a presumption of irreparable harm from conduct that ended over a year ago and shows no sign of recurring.

Second, *Plaintiffs' own delay* in filing this action undercuts any claim of urgency or irreparable harm. The Moving Defendants ceased using the term "boogie" in July and August 2025. Plaintiffs filed the Complaint on July 20, 2026, nearly a full year later. If Plaintiffs were truly suffering irreparable harm from Moving Defendants' conduct, Plaintiffs would not have delayed nearly a year and, instead, acted promptly to stop it. Plaintiffs' apparent delay of approximately one year in bringing this action creates a strong inference that the alleged harm was not, in fact, irreparable.[4]

[4] Courts routinely consider a plaintiff's delay in seeking injunctive relief as evidence that the alleged harm is not truly irreparable. A plaintiff who is aware of allegedly infringing activity and waits months or years to seek relief cannot credibly claim that it faces imminent, irreparable injury. *See Wreal, LLC v. Amazon.com, Inc.*, 840 F.3d 1244, 1248 (11th Cir. 2016) (considering delay in seeking injunctive relief as a factor weighing against irreparable harm); *Citibank, N.A. v. Citytrust*, 756 F.2d 273, 276 (2d Cir.

Third, any claim of future harm is entirely speculative. The Moving Defendants have submitted sworn declarations establishing that they have no intention of resuming the use of "boogie" or "boogie board" in their product listings. (Shan Decl., ¶13; Zhou Decl., ¶13; Y. Shi Decl., ¶14; Yao Decl., ¶12.) Plaintiffs have offered no evidence to the contrary. Speculation that a defendant might, at some unspecified future date, resume conduct it voluntarily ceased over a year ago does not constitute the kind of concrete, imminent harm required to support injunctive relief.

The statutory presumption of irreparable harm is a tool to assist courts in cases of active, ongoing infringement. It was not designed to sustain injunctions against defendants who independently and voluntarily ceased the challenged conduct long before the plaintiff brought suit. Based on the foregoing, Moving Defendants have rebutted any presumption of irreparable harm to Plaintiffs.

**C. The Balance of Equities Favors Defendants**

1. <u>The Asset Freeze Is Overbroad and Disproportionate</u>

The TRO imposes a blanket asset freeze on all ninety-eight defendants, including the Moving Defendants, four individual sellers whose combined all-time sales of the accused body board listings amount to approximately

1985) (plaintiff's delay in bringing action undercuts claim of irreparable harm).

$26,388.90. The freeze captures all funds held by these defendants' payment processors and marketplace platforms, without regard to whether those funds derive from any allegedly infringing activity.

This is critical because a substantial portion of the Moving Defendants' sales were made after they had already removed "boogie" from their listings, sales that involved no use of the allegedly infringing term whatsoever:

- COTEKUS generated $2,541.75 after removing "boogie" from its listing. (Shan Decl., ¶8, Ex. 1.)
- GoplusUS generated $7,990.39 after removing "boogie" from its listing. (Zhou Decl., ¶8, Ex. 1.)
- LDAILY generated $1,379.70 after removing "boogie" from its listing. (Y. Shi Decl., ¶8, Ex. 1.)
- Lifezealus generated $3,276.88 after removing "boogie board" from its listing. (Yao Decl., ¶8, Ex. 1.)

In total, $15,188.72 of the Moving Defendants' combined sales, over 57% of their total revenue, was generated during a period in which no allegedly infringing conduct was occurring. Yet all of these funds remain frozen. The asset freeze, as applied to the Moving Defendants, is not a targeted remedy to prevent dissipation of ill-gotten gains; it is an indiscriminate freeze of legitimate business revenues that has a devastating impact on these small sellers' ability to conduct their businesses. The practical effect of this overbroad freeze is to create disproportionate settlement pressure. To take one example, Lifezealus generated only $325.53 in sales before removing "boogie board" from its listing, yet its entire Temu account, including $3,276.88 in post-removal

revenue, remains frozen. In cases such as this, where scores of small foreign sellers are named as defendants, a blanket asset freeze on the entirety of a seller's account, not merely funds traceable to the allegedly infringing conduct, gives plaintiffs extraordinary leverage to extract settlements that bear no reasonable relationship to the merits of the claims. The Moving Defendants' frozen accounts contain revenue from wholly unrelated products, and the economic pressure of an indefinite freeze on all business operations is precisely the kind of coercive dynamic that courts should guard against when evaluating the balance of equities.

2. The $10,000 Bond Is Inadequate

Under Federal Rule of Civil Procedure 65(c), a court may issue a preliminary injunction or restraining order "only if the movant gives security in an amount that the court considers proper to pay the costs and damages sustained by any party found to have been wrongfully enjoined or restrained." The bond requirement under Rule 65(c) serves a critical purpose: it provides a mechanism to compensate the restrained party for damages suffered if the restraining order is later found to have been wrongfully imposed. *See BellSouth Telecommunications, Inc. v. MCIMetro Access Transmission Services, LLC*, 425 F.3d 964, 971 (11th Cir. 2005) (discussing the bond requirement and its protective function under Rule 65(c)).

Here, the Court set a bond of $10,000 to cover all ninety-eight defendants. This amounts to approximately $102 per defendant. For the Moving Defendants, whose accused listings generated combined all-time sales of approximately $26,388.90, including $15,188.72 in post-removal sales, and whose frozen accounts also hold revenue from unrelated products, a bond of roughly $102 each is facially inadequate. If the TRO or preliminary injunction is later found to have been wrongfully imposed, the bond would not come close to compensating Moving Defendants for the damages they have sustained from the freeze of their legitimate business revenues.

The bond must bear some reasonable relationship to the potential damages the restrained parties may suffer. *See Fed. R. Civ. P.* 65(c). A total bond of $10,000 for ninety-eight defendants manifestly fails this standard. Should the Court decline to dissolve the TRO or deny the preliminary injunction, the Moving Defendants respectfully request that the Court require Plaintiffs to post a substantially increased bond that adequately reflects the potential harm to all restrained parties.

3. <u>Moving Defendants Are Cooperating with the TRO and with the Case</u>

Moving Defendants are not the anonymous, evasive counterfeiters that Plaintiffs' Complaint presupposes. All four have retained experienced counsel at Troutman Pepper Locke LLP. All four have filed Notices of Appearance and Certificates of Interested Persons and Entities. All four have submitted sworn

declarations with supporting documentary evidence. And all four are prepared to continue participating in this litigation in good faith.

The extraordinary remedy of a TRO obtained *ex parte* is designed for situations where a defendant is likely to destroy evidence, dissipate assets, or flee the jurisdiction if given advance notice of the proceeding. *See Fed. R. Civ. P. 65(b)(1)* (TRO may be issued without notice only if "specific facts in an affidavit or a verified complaint clearly show that immediate and irreparable injury, loss, or damage will result to the movant before the adverse party can be heard in opposition"); *see also Granny Goose Foods, Inc. v. Brotherhood of Teamsters*, 415 U.S. 423, 438–39 (1974) (emphasizing the "stringent restrictions" on ex parte TROs and that such orders "should be restricted to serving their underlying purpose of preserving the status quo and preventing irreparable harm just so long as is necessary to hold a hearing"). None of these concerns applies to Moving Defendants. They have affirmatively presented themselves to the Court, submitted to its jurisdiction (with LDAILY's reservation as noted above), and demonstrated a willingness to resolve this matter through the orderly process of litigation. Indeed, counsel for Moving Defendants contacted Plaintiffs' counsel on September 24 and again on September 28, 2026, seeking to engage in a dialogue regarding these defendants, and received no response. Maintaining a sweeping asset freeze against these cooperative defendants serves no legitimate purpose.

### D. The Public Interest Does Not Support the Injunction

The public interest is unquestionably served by the enforcement of trademark rights and the prevention of consumer confusion. But the public interest is equally served by protecting legitimate commerce from overbroad injunctions and by ensuring that the extraordinary remedy of injunctive relief is not weaponized against small businesses no longer engaged in any allegedly infringing activity.

Here, the alleged infringement has ceased. There is no evidence of actual counterfeiting: Moving Defendants do not produce imitation Wham-O products or affix Wham-O's marks to their goods. The only conduct at issue was the use of a descriptive keyword in online product listings, and that use ended over a year ago. Maintaining overbroad injunctive relief against defendants who are no longer infringing does not protect consumers from confusion; it chills legitimate commercial activity without any corresponding consumer-protection benefit. Maintaining a sweeping injunction and asset freeze against these defendants does not serve the public interest in preventing trademark infringement; it serves only to impose disproportionate burdens on small businesses that are no longer engaged in any allegedly infringing activity and have demonstrated no intention of resuming it.

The public interest weighs against, not in favor of, the requested injunctive relief as applied to Moving Defendants.

### E. Plaintiffs Appear to Have Failed to Comply with Their Heightened Duty of Candor in the *Ex Parte* TRO Proceeding

In *ex parte* proceedings, counsel for the moving party bears a heightened obligation of candor to the Court. This duty requires the disclosure of all material facts known to counsel, *including facts adverse to the moving party's position*. *Green Development Corp. S.A. De C.V. v. Zamora*, No. 15-21594-MC, 2016 WL 2745844, at *4 (S.D. Fla. May 10, 2016) ("The duty of candor is particularly heightened where, as here, *ex parte* proceedings are launched without the opposing party's knowledge or participation."); *accord In re Klein*, No. 1:23-MC-24630-CMA, 2025 WL 5078047, at *16 (S.D. Fla. Oct. 17, 2025). Material omissions in an *ex parte* proceeding can serve as grounds to vacate the resulting order. *See Pons v. AMKE Registered Agents, LLC*, 835 F. App'x 465, 466 (11th Cir. 2020) (assuming without deciding that an *ex parte* order could be vacated for lack of candor but affirming refusal to vacate because the omission was immaterial).

Here, Plaintiffs obtained the TRO by presenting all ninety-eight Doe defendants to the Court as an undifferentiated group of active counterfeiters engaged in an ongoing counterfeiting operation. The TRO relied on Plaintiffs' representations that the Moving Defendants were "using spurious marks that are identical with, or substantially indistinguishable from, one or more of Plaintiffs' Marks in commerce." (Dkt. #9.) Plaintiffs then obtained an extension

of the TRO on the same basis. (Dkt. #13.) The Complaint and TRO application made no mention that at least some defendants had already ceased the allegedly infringing conduct—i.e., Moving Defendants ceased any such purported conduct **eleven-plus months** before the Complaint was filed. This omission is not peripheral or incidental to the TRO analysis: it goes directly to the core factors the Court was required to evaluate in issuing the TRO Order.

Furthermore, as noted in n.1, *supra*, the Complaint, Plaintiffs' supporting declaration, and Plaintiffs' briefing in support of the TRO Order each fail to disclose *when* the screenshots of Moving Defendants' product listings were taken. Given that the Moving Defendants removed "boogie" from their listings in July–August 2025, the screenshots were very likely captured before that removal, making them stale and misleading when presented to the Court in support of the TRO application filed in July 2026. Presenting year-old screenshots as evidence of *current* infringement, without disclosing their date or the fact that the depicted conduct had ceased, compounds the materiality of the omission.

This is not the kind of immaterial omission that courts have excused. *Cf. Pons*, 835 F. App'x at 466 (affirming refusal to vacate where omission was immaterial); *Plant v. Doe*, 19 F. Supp. 2d 1316 (S.D. Fla. 1998) (denying ex parte TRO in trademark infringement action). The omission here is material because it bears directly on the Court's evaluation of the most critical

preliminary injunction factors. Had the Court been informed that at least four of the ninety-eight defendants had independently and voluntarily ceased the alleged conduct over a year before the Complaint was filed, it may well have reached a different conclusion, at minimum, as to those four defendants.

## V. RELIEF REQUESTED

For the foregoing reasons, the Moving Defendants respectfully request that the Court grant their motion to dissolve the TRO Order and find that Moving Defendants have established cause why a preliminary injunction should not issue as to them.

Dated: September 30, 2026

Respectfully submitted,

**TROUTMAN PEPPER LOCKE LLP**
*/s/ Bryan G. Harrison*
Bryan G. Harrison
(GA Bar No. 331750)
600 Peachtree St. NE, Suite 3000
Atlanta, GA 30308
T: (404) 885-3330
bryan.harrison@troutman.com
*Attorneys for Moving Defendants*

## L.R. 7.1(D) CERTIFICATE OF COMPLIANCE

Pursuant to Local Rule 7.1(D), I hereby certify that the foregoing has been prepared with Century Schoolbook 13-point font and complies with the requirements set forth by the Court in Local Rules 5.1(B) and (C).

*/s/Bryan G. Harrison*
BRYAN G. HARRISON

**CERTIFICATE OF SERVICE**

The undersigned certifies that on September 30, 2026, a true and correct copy of the above document was filed via delivery to the Clerk of Court for filing in this sealed action, who shall cause service on all counsel of record, and that courtesy copies of the above were emailed to counsel of record for Plaintiff.

*/s/ Bryan G. Harrison*
Bryan G. Harrison

# EXHIBIT A

**IN THE UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF GEORGIA**
**ATLANTA DIVISION**

| | |
|---|---|
| WHAM-O HOLDING, LTD. and<br>INTERSPORT CORP. d/b/a WHAM-O,<br>*Plaintiffs,*<br>v.<br>CHENGLIANG-US, et al.,<br>*Defendants.* | **FILED UNDER SEAL**<br>Civil Action No.<br>1:26-CV-04116-JPB |

**DECLARATION OF BAOHUA SHAN IN SUPPORT OF DEFENDANT KOTEK INTERNATIONAL LIMITED'S MOTION TO DISSOLVE THE TEMPORARY RESTRAINING ORDER AND OPPOSITION TO PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION**

I, **Baohua Shan**, declare as follows:

1. I am a sales director for KOTEK International Limited ("KOTEK"). I have personal knowledge of the business operations of KOTEK make this declaration based on my personal knowledge, and, if called upon to do so, I would testify to the matters set forth herein. I make this declaration in support of Defendant KOTEK's Motion to Dissolve the Temporary Restraining Order and Opposition to Plaintiffs' Motion for Preliminary Injunction.

2. KOTEK is a corporation organized under the laws of Hong Kong, China. It operates an Amazon seller account under the seller alias "COTEKUS" (Seller ID: A3I2GD24ZW7S7X). KOTEK is identified as Doe No. 2 in Schedule A to the Complaint in this action.

3. KOTEK sells various consumer goods on Amazon.com under its own brand, "KOTEK." KOTEK is not a counterfeiter or imitator of Wham-O products. Its products are sold under the KOTEK brand name, not the BOOGIE or BOOGIE BOARD brand.

4. Prior to August 2025, the word "boogie" appeared in the product title of one COTEKUS listing on Amazon (ASIN: B0FBGK7TJG). The product title was: "KOTEK Boogie Board, 33/37/42 Inch Bodyboard with Wrist Leash, EPS Core, Dual Channel, HDPE Slick Bottom, Body Board for All Skill Levels & Wave Conditions."

5. The word "boogie" was used in that product title as a common descriptive term for the type of product (i.e., a body board), not as an attempt to pass off COTEKUS products as Plaintiffs' branded goods. The product was clearly branded and sold under the KOTEK brand name, as evidenced by the very first word on the title of the product.

6. On or about August 17, 2025, KOTEK voluntarily removed the word "boogie" from the product listing title for ASIN B0FBGK7TJG. This action

was taken on KOTEK's own initiative, without any demand or communication from Plaintiffs or their counsel.

7. Since on or about August 17, 2025, no COTEKUS product listing has contained the word "boogie" or the phrase "boogie board" in its title or product description on Amazon. **Exhibit 1** to this declaration is an order dated August 30, 2025, confirming that the product listing no longer contained the word "boogie" as of that date.

8. COTEKUS's total all-time sales on Amazon for the product listing at issue were $4,459.25. Of that total, $1,917.50 in sales occurred before and up to the date the word "boogie" was removed from the listing on or about August 17, 2025. The remaining $2,541.75 in sales occurred after the removal of the word "boogie" from the listing and had no association with the term.

9. KOTEK received a copy of the Temporary Restraining Order in this action on September 17, 2026. KOTEK has fully complied with the Temporary Restraining Order since receiving it.

10. The Temporary Restraining Order has resulted in a freeze of all funds in COTEKUS's Amazon seller account—not merely funds associated with the formerly "boogie"-related listing, but the entirety of the account, including revenue from products that have no connection whatsoever to the claims in this case.

11. This freeze has caused significant harm to KOTEK's business operations, including inability to pay suppliers, fulfill orders on unrelated products, and maintain normal business operations.

12. As of the date of this declaration, no COTEKUS product listing on Amazon.com contains the word "boogie" or any variation thereof in its title or product description.

13. KOTEK has no intention of using the word "boogie" in any future product listings.

14. There is no ongoing infringement by KOTEK of either of Plaintiffs' trademark.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on September 29, 2026.

BaoHua Shan

Baohua Shan
Sales Director, KOTEK International Limited

# EXHIBIT 1

## Order summary

Purchase date: Sat, Aug 30, 2025, 7:49 AM PDT Fulfillment: Seller

## Order contents

| Status | Image | Product name | More in |
|---|---|---|---|
| Canceled |  | KOTEK 33/37/41 Inch Body Board with Wrist Leash, EPS Core, Dual Channel, HDPE Slick Bottom, Bodyboard for All Skill Levels & Wave Conditions (Rainbow Vortex, 33")<br>ASIN: **B0FBGK7TJG**<br>SKU: PI-NP11750-33 | Conditi<br>Order It |

# EXHIBIT B

**IN THE UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF GEORGIA**
**ATLANTA DIVISION**

| | |
|---|---|
| WHAM-O HOLDING, LTD. and<br>INTERSPORT CORP. d/b/a WHAM-O,<br>*Plaintiffs,*<br>v.<br>CHENGLIANG-US, et al.,<br>*Defendants.* | **FILED UNDER SEAL**<br>Civil Action No.<br>1:26-CV-04116-JPB |

**DECLARATION OF LILY ZHOU IN SUPPORT OF DEFENDANT SUPERBUY INC.'S MOTION TO DISSOLVE THE TEMPORARY RESTRAINING ORDER AND OPPOSITION TO PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION**

I, **Lily Zhou**, declare as follows:

1. I am a sales director for Superbuy Inc. ("Superbuy"). I have personal knowledge of the business operations of Superbuy, make this declaration based on my personal knowledge, and, if called upon to do so, I would testify to the matters set forth herein. I make this declaration in support of Defendant Superbuy's Motion to Dissolve the Temporary Restraining Order and Opposition to Plaintiffs' Motion for Preliminary Injunction.

2. Superbuy is a corporation organized under the laws of California, USA. It operates an Amazon seller account under the seller alias "GoplusUS" (Seller ID: A1OIIZJKTXNTOC). Superbuy is identified as Doe No. 4 in Schedule A to the Complaint in this action.

3. Superbuy sells various consumer goods on Amazon.com under its own brand, "Goplus." Superbuy is not a counterfeiter or imitator of Plaintiffs' products. Its products are sold under the Goplus brand name, not the BOOGIE or BOOGIE BOARD brand.

4. Prior to July 2025, the word "boogie" appeared in the product title of one GoplusUS listing on Amazon (ASIN: B084TM3SVQ). The product title was: "Goplus Boogie Boards for Beach, 41"/37"/33" Lightweight Body Board with EPS Core, XPE Deck, HDPE Slick Bottom, Wrist Leash, Bodyboard for Kids Adults Surfing."

5. The word "boogie" was used in that product title as a common descriptive term for the type of product (i.e., a body board), not as an attempt to pass off GoplusUS products as Plaintiffs' branded goods. The product was clearly branded and sold under the Goplus brand name, as evidenced by the very first word of the product title.

6. On or about July 23, 2025, Superbuy voluntarily removed the word "boogie" from the product listing title. This action was taken on Superbuy's own initiative, without any demand or communication from Plaintiffs or their counsel.

7. Since on or about July 23, 2025, no GoplusUS product listing has contained the word "boogie" or the phrase "boogie board" in its title or product description on Amazon. **Exhibit 1** to this declaration is an order dated July 26, 2025, confirming that the product listing no longer contained the word "boogie" as of that date.

8. GoplusUS's total all-time sales on Amazon for the product listing at issue were $16,303.91. Of that total, $8,313.52 in sales occurred before and up to the date the word "boogie" was removed from the listing. The remaining $7,990.39 in sales occurred after the removal of the word "boogie" from the listing and had no association with the term.

9. Superbuy received a copy of the Temporary Restraining Order in this action on September 16, 2026. Superbuy has fully complied with the Temporary Restraining Order since receiving it.

10. The Temporary Restraining Order has resulted in a freeze of all funds in GoplusUS's Amazon seller account—not merely funds associated with the

formerly "boogie"-related listing, but the entirety of the account, including revenue from products that have no connection whatsoever to the claims in this case.

11. This freeze has caused significant harm to Superbuy's business operations, including inability to pay suppliers, fulfill orders on unrelated products, and maintain normal business operations.

12. As of the date of this declaration, no GoplusUS product listing on Amazon.com contains the word "boogie" or any variation thereof in its title or product description.

13. Superbuy has no intention of using the word "boogie" in any future product listings.

14. There is no ongoing infringement by Superbuy of either of Plaintiffs' trademark.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on September 29, 2026.

Lily Zhou

Lily Zhou
Sales Director, Superbuy Inc.

# EXHIBIT 1

## Order summary

| | | | |
|---|---|---|---|
| Ship by: | Mon, Jul 28, 2025 PDT | Shipping service: | Standard |
| Deliver by: | Wed, Jul 30, 2025 PDT to Mon, Aug 4, 2025 PDT | Fulfillment: | Seller |
| Purchase date: | Sat, Jul 26, 2025, 3:48 AM PDT | Sales channel: | Amazon.com |

## More details

Tax Collection Model: MarketplaceFacilitator

Tax Collection Responsible Party: Amazon Services LL

## Order contents

| Status | Image | Product name | More inforn |
|---|---|---|---|
| Shipped |  | Goplus 41"/37"/33" Lightweight Body Board for Beach, Surf Board with EPS Core, XPE Deck, HDPE Slick Bottom, Wrist Leash, Bodyboard for Kids Adults Surfing (Black+Pink+Blue, 37 Inches)<br>ASIN: **B0D541X232**<br>SKU: SU-11748-37-PN | Condition: Ne<br>Order Item ID |

# EXHIBIT C

**IN THE UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF GEORGIA**
**ATLANTA DIVISION**

| | |
|---|---|
| WHAM-O HOLDING, LTD. and<br>INTERSPORT CORP. d/b/a WHAM-O,<br>*Plaintiffs,*<br>v.<br>CHENGLIANG-US, et al.,<br>*Defendants.* | **FILED UNDER SEAL**<br>Civil Action No.<br>1:26-CV-04116-JPB |

**DECLARATION OF YANRONG SHI IN SUPPORT OF DEFENDANT LDAILY INTERNATIONAL LIMITED'S MOTION TO DISSOLVE THE TEMPORARY RESTRAINING ORDER AND OPPOSITION TO PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION**

I, **Yanrong Shi**, declare as follows:

1. I am a sales director for LDAILY International Limited ("LDAILY"). I have personal knowledge of the business operations of LDAILY, make this declaration based on my personal knowledge, and, if called upon to do so, I would testify to the matters set forth herein. I make this declaration in support of Defendant LDAILY's Motion to Dissolve the Temporary Restraining Order and Opposition to Plaintiffs' Motion for Preliminary Injunction.

2. LDAILY is a corporation organized under the laws of Hong Kong. It operates an Amazon seller account under the seller alias "LDAILY" (Seller ID: ALCZ84QFA7EWF). LDAILY is identified as Doe No. 7 in Schedule A to the Complaint in this action.

3. LDAILY sells various consumer goods on Amazon.com under its own brand, "LDAILY." LDAILY is not a counterfeiter or imitator of Wham-O products. Its products are sold under the LDAILY brand name, not the BOOGIE or BOOGIE BOARD brand.

4. Prior to July 2025, the word "boogie" appeared in the product title of one LDAILY listing on Amazon (ASIN: B0F66QLQ7F). The product title was: "LDAILY Boogie Boards for Beach, 33/37/41" Lightweight Body Board with EPS Core, XPE Deck & HDPE Slick Bottom, Dual Channels & Wrist Leash for Youth, Adults, Surf Board for Sea, River."

5. The word "boogie" was used in that product title as a common descriptive term for the type of product (i.e., a body board), not as an attempt to pass off LDAILY products as Plaintiffs' branded goods. The product was clearly branded and sold under the LDAILY brand name, as evidenced by the very first word of the product title.

6. On or about July 31, 2025, LDAILY voluntarily removed the word "boogie" from the product listing title for ASIN B0F66QLQ7F. This action was taken on LDAILY's own initiative, without any demand or communication from Plaintiffs or their counsel.

7. Since on or about July 31, 2025, no LDAILY product listing has contained the word "boogie" or the phrase "boogie board" in its title or product description on Amazon. **Exhibit 1** to this declaration is an order dated August 6, 2025, confirming that the product listing no longer contained the word "boogie" as of that date.

8. LDAILY's total all-time sales on Amazon for the product listing at issue were $2,023.33. Of that total, $643.63 in sales occurred before and up to the date the word "boogie" was removed from the listing. The remaining $1,379.70 in sales occurred after the removal of the word "boogie" from the listing and had no association with the term.

9. LDAILY's sales records do not indicate that any accused product was ever sold to a customer in, nor shipped to, the State of Georgia.

10. LDAILY received a copy of the Temporary Restraining Order in this action on September 17, 2026. LDAILY has fully complied with the Temporary Restraining Order since receiving it.

11. The Temporary Restraining Order has resulted in a freeze of all funds in LDAILY's Amazon seller account—not merely funds associated with the formerly "boogie"-related listing, but the entirety of the account, including revenue from products that have no connection whatsoever to the claims in this case.

12. This freeze has caused significant harm to LDAILY's business operations, including inability to pay suppliers, fulfill orders on unrelated products, and maintain normal business operations.

13. As of the date of this declaration, no LDAILY product listing on Amazon.com contains the word "boogie" or any variation thereof in its title or product description.

14. LDAILY has no intention of using the word "boogie" in any future product listings.

15. There is no ongoing infringement by LDAILY of either of Plaintiffs' trademark.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on September 29, 2026.

Yanrong Shi

Yanrong Shi
Sales Director, LDAILY International Limited

# EXHIBIT 1

### Order summary

| | | | |
|---|---|---|---|
| Ship by: | Thu, Aug 7, 2025 PDT | Shipping service: | Standard |
| Deliver by: | Mon, Aug 11, 2025 PDT to Wed, Aug 13, 2025 PDT | Fulfillment: | Seller |
| Purchase date: | Wed, Aug 6, 2025, 1:22 PM PDT | Sales channel: | Amazon.com |

### More details

Tax Collection Model: MarketplaceFacilitator    Tax Collection Responsible Party: Amazon Services LLC

### Order contents

| Status | Image | Product name | More info |
|---|---|---|---|
| Shipped |  | LDAILY Body Board for Beach, 33/37/41" Lightweight Bodyboard with EPS Core, XPE Deck & HDPE Slick Bottom, Dual Channels & Wrist Leash for Youth, Adults, Surf Board for Sea, River<br>ASIN: **B0F66QLQ7F**<br>SKU: LD-3857-L-OP | Condition:<br>Order Iten |

# EXHIBIT D

**IN THE UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF GEORGIA**
**ATLANTA DIVISION**

| | |
|---|---|
| WHAM-O HOLDING, LTD. and<br><br>INTERSPORT CORP. d/b/a WHAM-O,<br><br>*Plaintiffs,*<br><br>v.<br><br>CHENGLIANG-US, et al.,<br><br>*Defendants.* | **FILED UNDER SEAL**<br><br>Civil Action No.<br><br>1:26-CV-04116-JPB |

**DECLARATION OF FANGFANG YAO IN SUPPORT OF DEFENDANT HARHOMEY INTERNATIONAL LIMITED'S MOTION TO DISSOLVE THE TEMPORARY RESTRAINING ORDER AND OPPOSITION TO PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION**

I, **Fangfang Yao**, declare as follows:

1. I am a sales director for Harhomey International Limited ("Harhomey"). I have personal knowledge of the business operations of Harhomey, make this declaration based on my personal knowledge, and, if called upon to do so, I would testify to the matters set forth herein. I make this declaration in support of Defendant Harhomey's Motion to Dissolve the Temporary Restraining Order and Opposition to Plaintiffs' Motion for Preliminary Injunction.

2. Harhomey is a corporation organized under the laws of Hong Kong. It operates a Temu seller account under the seller alias "Lifezealus" (Seller ID: 634418216000383). Harhomey is identified as Doe No. 76 in Schedule A to the Complaint in this action.

3. Harhomey sells various consumer goods on Temu.com under its own brand, "LIFEZEAL." Harhomey is not a counterfeiter or imitator of Plaintiffs' products. Its products are sold under the LIFEZEAL brand name, not the BOOGIE or BOOGIE BOARD brand.

4. Prior to July 2025, the phrase "boogie board" appeared in the product description text of one Lifezealus listing on Temu. The product title was: "LIFEZEAL 41" Lightweight Body Board with EPS Core, XPE Deck & HDPE Bottom - Vibrant Tie-Dye Design, Crescent Tail for Stability, Inflation-Free Surfboard for Pool/Beach/Ocean - Includes Adjustable Wrist Leash, Decorative Swimboard." The phrase "boogie board" did not appear in the product title itself.

5. The phrase "boogie board" was used in the product description as a common descriptive term for the type of product (i.e., a body board), not as an attempt to pass off Lifezealus products as Plaintiffs' branded goods. The product was clearly branded and sold under the LIFEZEAL brand name, as evidenced by the very first word of the product title.

6. On or about July 24, 2025, Harhomey voluntarily removed the phrase "boogie board" from the product description of this listing. This action was taken on Harhomey's own initiative, without any demand or communication from Plaintiffs or their counsel.

7. Since on or about July 24, 2025, no Lifezealus product listing has contained the word "boogie" or the phrase "boogie board" in its title or product description on Temu. **Exhibit 1** to this declaration shows a record change on July 24, 2025, to update the product description to remove the terms.

8. Lifezealus's total all-time sales on Temu for the product listing at issue were $3,602.41. Of that total, $325.53 in sales occurred before and up to the date the phrase "boogie board" was removed from the listing on or about July 24, 2025. The remaining $3,276.88 in sales occurred after the removal of the phrase "boogie board" from the listing and had no association with the term.

9. The Temporary Restraining Order has resulted in a freeze of all funds in Lifezealus's Temu seller account—not merely funds associated with the formerly "boogie board"-related listing, but the entirety of the account, including revenue from products that have no connection whatsoever to the claims in this case.

10. This freeze has caused significant harm to Harhomey's business operations, including inability to pay suppliers, fulfill orders on unrelated products, and maintain normal business operations.

11. As of the date of this declaration, no Lifezealus product listing on Temu contains the word "boogie" or the phrase "boogie board" or any variation thereof in its title or product description.

12. Harhomey has no intention of using the phrase "boogie board" in any future product listings.

13. There is no ongoing infringement by Harhomey of either of Plaintiffs' trademark.

14. As of the date of this declaration, Harhomey has not received a copy of the Temporary Restraining Order directly from the Plaintiffs in this action.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on September 29, 2026.

Fangfang Yao

Fangfang Yao
Sales Director, Harhomey International Limited

# EXHIBIT 1


详情图文
Experience stability and ease with this body board designed with well-made details for an enjoyable surfing experience. Lightweight and portable, this bodyboard offers quick water fun without the need for inflation. This bodyboard features a comfortable and impact-resistant XPE deck, a strong and lightweight EPS core, and a high-speed smooth HDPE bottom for durability and performance.
Stable & Easy to Ride: The crescent tail provides a good bite on the wave face.
Lightweight for Easy Carrying: This lightweight, portable and inflation-free body board provides you with water fun in no time. Carrying anywhere you go, it will be your perfect partner for beach, sea and pool.
Heat Laminated Bodyboard: The XPE deck is comfy and impact resistant. The EPS core is ultra strong and lightweight, built for years of use. And the HDPE bottom boasts a high-speed smooth surface.
Wrist Leash Included: This surfboard comes with a detachable wrist leash that is adjustable for all wrist sizes, which is a must-have accessory to keep your board close and attached to you and prevent your surfboard from losing in the ocean.
Available in multiple sizes, it can meet different needs of kids, teens and adults and offer endless water entertainment, perfect for family time and friends gathering.
Color: Multi-color.
Material: XPE + EPS + HDPE.
.
Board Length: 41".
Board Width: 20.5".
更新状态
失败原因
任务生成时间
操作
待更新
2026-03-17 03:12:40
操作记录
尺寸标注异常 (1)
已完成
2025-05-07 20:38:18
操作记录
已完成
2025-05-07 20:38:18
操作记录
已完成
2025-07-24 15:08:14
操作记录
已完成
2025-05-07 20:38:18
操作记录